Zelaya Mirlis v. Sarah Greer Mr. Colbert. Thank you. Good morning and may it please the court. Richard Colbert of the law firm De Pitney for Appellant Sarah Greer. As the court knows, Mrs. Greer's original appeal has been partially resolved through Judge Dooley's September 1, 2022 ruling on plaintiff's motion opening judgment in part. In sum, Judge Dooley found that there was no quote uptick, close quote, in Sarah Greer's retirement benefits and she therefore did not engage in any fraudulent transfers relating to those benefits as alleged by plaintiff. Judge Dooley's decision therefore reduced the underlying judgment from approximately $427,000 to approximately $289,000. Therefore, we are here today to ask that you reverse the remaining judgment because Mrs. Greer also did not engage or commit any fraudulent transfers when she rightfully withdrew her own money from two long-standing joint bank accounts, Stark Bank and Liberty Bank, that she shared with her husband. Under well-established Connecticut law, a spouse who deposits money into a joint account with his or her spouse is presumed to have made a gift of the entirety of the funds deposited, thereby giving the joint holding spouse the unconditional right to 100% of the funds subject only to the spouse's equal right to the same funds. Well, that's not entirely so, is it? I mean, what about the Carrillo case? Doesn't that say that the day before Mrs. Greer removed this money, Rabbi Greer, her husband, could have taken all of that money out and used it to pay the judgment? That's correct. That's correct. And that tells us nothing about what happens the next day because Mrs. Greer could also have taken that money out at any time. Correct. Is that the point? That's the point, exactly. Yes. The complaint fails to allege, and no argument has ever been made by the plaintiff that rebuts the presumption that a gift to Mrs. Greer of all the money originally deposited was made into the long-standing bank accounts. As a consequence, when Mrs. Greer withdrew the funds from the joint bank account, she was not withdrawing her husband's funds. She was withdrawing her own funds. One of the things that I'm trying to sort through, I take your argument, but when you look at the Uniform Project Reconvenece Law, particularly in 52-552-G, because it tells us when a transfer is made, which some of this is about timing, so the question I'm asking myself is when did a transfer from husband occur? And it looks to me like this provision says, with respect to an asset that is not real property, when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than through this provision. Mm-hm. And so I'm wondering what you would say to the argument that it's not that wife was, and I'm sorry for reducing people to husband and wife, it's just easier for description. Sure. It's not that she was herself engaging in a fraudulent transfer when she withdrew the funds. It's that her act of withdrawing the funds, therefore removing them from the potential reach of a creditor, was the moment at which husband's transfer actually is deemed by operation of law to have taken place. Mm-hm. What's the answer to that? Well, two things. The fraudulent transfer statute applies only to the transfer of the debtor's funds. We are drawing a line, be it a fine line, that when a co-holder, spouse of an account, takes the money out in which they have 100% interest in, they are not withdrawing the debtor's funds. They are withdrawing their own funds. Of course, the paradox is that he has 100% interest in them as well, right? They both have, either one of them up until that moment could withdraw them all. And significantly, his creditors could attach the entirety of the account to satisfy a debt up until the moment she withdraws them. So again, why doesn't, by operation of this statute, her withdrawal finally perfect his contribution of those funds to the point where the transfer has then occurred, such that it is, in fact, deemed to be him fraudulently transferring the money by operation of that statute? Our position, Judge, is that when he made the deposits over the many years that he made them into the long-standing account, they were gifts. And once they were gifts, they're no longer subject to a transfer being fraudulent when she decides to take them out later on. There was no argument in this case. I didn't mean to cut you off. There's no argument in this case that when the money was transferred into the accounts, that that was fraudulent. The argument here is only that when the money was taken out of the accounts, it was fraudulently transferred. And this is exactly the case- No, no, I understand your argument. I'm just trying to reconcile your argument. I guess I'm asking you to take your argument and sort of talk about this statute in the context of your argument. Because it would seem to say that, well, when his transfer, even though he might have been putting the money in over the years, was deemed to be made when the transfer was so far perfected that a creditor on a simple contract couldn't acquire judicially other than through this provision. And that would be the moment when she took the money out. And so even though he might have, as a sort of factual matter, put the money in long before by operation of law, is it deemed to be then? Is there an answer to that? Or is it just they're just different frameworks for looking at it? Yeah, our position, Judge, is that he is not making a transfer of the money when she takes it out. So it's not a transfer by him under the statute, and therefore the statute just simply doesn't apply. But when she puts the money into the account, it does not become unreachable by the creditor. It only becomes unreachable by the creditor when she takes the money. When he puts the money in, it does not become unreachable by the creditor. It's still sitting there waiting for a judgment to come along. Not even. Prior to a judgment, under Connecticut law, Mr. Marlis could have sought a prejudgment remedy and attached the account and prevented Mrs. Greer from taking the money out. This was never done. So he had an opportunity to prevent her from withdrawing her interest, and he never did. As you see in our briefs, this case is really identical, for the most part, to the Rao case. The First Circuit decision- I think this is all common sense. I mean, for some reason, she took the money, you say it was her money, in that account, jointly held, jointly owned account, and moved it into a separate account, which was just solely owned by her. And it strikes me that if the creditors could have reached the first one, then this is a transfer. I don't know whether it's fraudulent or not. She transferred the money, but did she do it under the instructions of her husband? I don't know. We don't- it's just this transfer occurred, but why isn't that sufficient? Well, first of all, there's no information in the record that she transferred the money subject to or at the request of her husband. In fact, at interrogatory- We don't have any evidence one way or another of that, do we? Well, there actually is in the record- The transfer. There is in the record evidence at JA 313 where she swore under oath in her interrogatories that she didn't speak to her husband at any time before she made the transfers, and that the only person she spoke to was her lawyer, who presumably advised her on Connecticut law. Speaking of Connecticut law, you were about to cite the Rao case. That's not a case about Connecticut law at all, is it? It's a Massachusetts case. It's not about Connecticut law, but it does have and apply the same law that Connecticut applies, which is the presumption that when a spouse makes a deposit into an account- Once it's the First Circuit deciding Massachusetts law, it's two steps removed from a decision of a Connecticut court, which might interpret the same basic materials differently. What I'm wondering about is, is there any case on point in Connecticut by any level of court addressing this precise situation? We were only able to find the Rao case as the most closely aligned case. So then why shouldn't we send this to the Connecticut Supreme Court and let them sort out their own law on this subject? Well, we think that the Rao case is- It's a case about the law of a different state in which a federal court is predicting what the Supreme Judicial Court of Massachusetts would say about Massachusetts law. But where the underlying- It seems to me to be pretty far removed from any interpretation by Connecticut courts about Connecticut law. I would respectfully disagree with the underlying premise of the case is that the same as Connecticut law, when a spouse makes a deposit into a joint account, that is a gift, and both of the parties therefore have the right, 100% right, to take out the entirety of the funds. And in that case, she was allowed to take that money out regardless of the fact that she hadn't contributed a penny to the account. And secondly, it was admitted that she was taking it out to avoid the creditors. And nevertheless, they still said it's fine because it's a gift to her, and the gift therefore allows her to take it out 100% before the creditors get there. In some ways, it's first come, first served. That's really what we believe the law is. And the court- I'd just add also that the court specifically said, quote, when a husband creates a joint account in his wife's name, there is no resulting trust in the husband or his creditors. And likewise, I would apply it the opposite way. Mr. Colbert, I know- I believe my time is up. You have three minutes for rebuttal, so why don't we hear your remaining points when you come back. Thank you. Mr. Beatman. Thank you, Your Honor. Good morning, and may it please the Court. Matthew Beatman on behalf of Eliabu Merlis, on behalf of the appellee. Your Honor, first I just want to state that in our view, in our humble view, the district court was clear within its discretion to enter this default. I noticed that we didn't discuss, or nothing was discussed at the beginning in terms of the willfulness, the duration of the lesser sanctions not being effected, and the warnings of the consequences associated with the default that's being entered. The sole focus was whether or not the court was, essentially, was correct in interpreting the law pursuant to the well-pleaded facts of the complaint. Although it wasn't mentioned, I do want to just note and just commend to the Court again what we put in our brief regarding that, but that the default was entered. It was a willful violation. There were multiple violations. There were multiple warnings. There were at least six orders, five as it relates to noncompliance, one as it relates to the initial order requiring the debtor to comply, the defendant to comply. There were four warnings that I counted. One on October 2nd of 19. Another- Counsel, can I jump in and sort of get you to- Absolutely. We had some lively discussion about this second issue, which is whether or not even assuming the allegations to be true, and that the default was properly entered today as a matter of law, establish a fraudulent transfer. And I'm struck by the reasoning in the Route case, which is applying the same uniform act that applies in Connecticut, and in the context of the same state law surrounding contributions to joint accounts by husband and wife. And it strikes me that one of the insights of that case is that there might be a timing problem with your allegations, in that if there was a fraudulent transfer by the debtor who was husband, it would have been when husband put the money into the account, not when wife who was not a debtor properly withdrew funds that she was fully entitled to withdraw without any limitations as to fraudulent transfers. Why isn't that right? So I would state several points, Your Honor. First, in Massachusetts, that may in fact be correct. In Connecticut, I would say it's not. First, the Carrillo case, as the court has already pointed out, number one. Number two, I might also note in this context that there is a Cato Company case that we cited in our brief that talks about a transfer between spouses being a fraudulent transfer. That came after the Carrillo case, where the court found, the district court in Connecticut found, under Connecticut state law, that there was a fraudulent transfer between spouses from a joint account. But in that case, on this timing question, the timing in that case of the transfer was already during a period when by virtue of the Fraudulent Transfer Act, a transfer by husband would be fraudulent. So husband deposited the money into the joint account would be sufficient to trigger that. What I'm trying to figure out is in this case, I'm not sure we know the facts, and I apologize if they're clearly laid out, but as to when husband deposited the monies into the account. But if hypothetically, husband deposited those monies into the account in 2010, and they've sat there fully available to husband or wife to withdraw as either sees fit without any sort of constraint or limitation or trust or fraudulent transfer requirements, why would wife, who is not a debtor, be subject to fraudulent transfer analysis when she chooses to withdraw that money, even if husband could not withdraw that money and place it out of this sort of credit? If I can speak to that. Several points. First, there was a PGR that was in the record where the magistrate judge as well as the district court judge found that the funds had been deposited by the husband, number one. During what period? I don't recall specifically if it stated what period it was. It did indicate just that they had found that- Well, what do the allegations in the complaint say as to, I mean, because we're not finding new facts. We're basically taking the facts alleged in the complaint. That's true, but I don't think it really matters. Your Honor previously referred to 52-552G, and I think in small letter B, which talks about when a transfer is made, and it says with respect to an asset that's not property or fixture, when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under certain subsections, it's superior to the interest of the transferee. So in this case, and under Carrillo, there is a property interest regardless of when it's deposited. There is a property interest of the husband in this case that is there at the time of the withdrawal of the funds. Right. What I'm struggling with is the question that that statute doesn't fully answer to my satisfaction. It does say in the, if husband were to withdraw that money at that point and put it someplace out of reach of creditors, that would clearly trigger the statute. But in order to be a fraudulent transfer in the first place, it has to be a transfer by the debtor under certain circumstances, right? Either insolvency or facing claims and attempting to evade them. It has to be a transfer by the debtor. And wife is not a debtor here. And so how do we even get into the fraudulent transfer framework when we don't have a transfer by husband, unless we're looking back to when husband put the money into the account? And what I'd say to that is, Your Honor, first of all, the complaint clearly states that the timing of when this was done, which is also mentioned in the PGR rulings by the court as well, in addition to the- When you say timing of when this was done, do you mean when wife withdrew the money or when husband put it in? Yes. When wife withdrew the money. Okay. And so my question is, is it your position that wife made a fraudulent transfer even though she's not the debtor? And if so, how do you fit that with the plain language of the statute, which only makes transfers by the debtor subject to the fraudulent transfer? So at the time of the transfers, regardless of who made it at the moment, at the time of the transfers, I think it's fair to say under Carillo and under the Connecticut Supreme Court's interpretation of content stat 36A290, the debtor had a property interest in that account. So when she withdrew those funds, and under the definition of transfer, which is somewhat broad under the Fraudulent Transfer Act, that was a fraudulent transfer effectively by the debtor because he is effectively removing it from the account no differently than if, say, a creditor executes on the bank account and takes it out. If that was a sham or something else, that would be deemed a transfer as well. Does he need to know that that transfer is happening for us to attribute it to him? What I say to that, Your Honor, is no, I don't think he necessarily needs to know, but I do think he did know and I do think the well-pleaded facts of the complaint state that this was an intentional fraudulent transfer as well as with the timing. These three transfers, Your Honor, one was done right before the verdict of like $5,000. One was done after the verdict under the underlying action. Whose intent matters, hers or his? I'm sorry? Whose intent are you looking at, hers or his? I think I'm looking at essentially both of them. Right, but she's not a debtor. That's correct. So why does her state of mind, if it's her money, it's her money, whether she's removing it because she doesn't want her husband's creditors coming after her for something she's not responsible for, or if she's doing it because she wants to buy a house and she's taking that for a down payment? When I say that, Your Honor, it's under the badges of fraud which courts traditionally look at and consider when they're considering whether or not something is an intentional fraudulent transfer. They look at a number of different factors, and that is one of the factors I believe that a court can consider and should consider. No, but the factor is whether his transfer is to an insider, right? Yes. This is a transfer from that insider that, for all we know, happened years after his transfer. Right, but Your Honor, whether she drew the check or not, it's coming from a joint account. I think as a matter of law, the court can view that and should view that as essentially a transfer from an account from the two of them to her. The fact that she was the drawer on the check doesn't change the fact that if you were to look at the check or the account, it's going to say both of them. So if I cut a check to my wife out of my account, and if I had a, we only have joint accounts. But if she had her own account, or maybe she does, and I did that, that essentially would still be a check from both of us because it's coming from our account. If instead of husband having been the sort of seed money for that account, wife had been the seed money for the account. And she worked hard for many years and put that money into a joint account, which by operation of the law was fully accessible to him and his creditors. And then husband gets into some trouble with creditors. And wife says, well, wait a minute, I'm not responsible for what you've brought. I'm going to take my hard-earned money, which is in our shared account, and put it somewhere else. Is that a fragile transfer? I'd say there is a case, I believe, of the Church's v. Kelleher, which is somewhat analogous, not quite because it wasn't husband and wife, where theoretically, not theoretically, but practically the bankruptcy court said, yes, it is a fraudulent transfer. But we don't have those facts here. We don't have to worry about whose money it was because it wasn't, it didn't come from, it did not originate from him. But in any event, I think there is a potential for that to be a fraudulent transfer under the Carrillo decision. Well, yeah, can I go back to Carrillo, though? Yes, sir. Carrillo is a different, is a distinguishable situation, isn't it? Because there, the creditor got to the money before it was removed, while it was still in the joint account, right? Yes, they did, Your Honor. And the Connecticut Supreme Court has said, well, that belongs 100 percent to either of the parties, including the debtor, and therefore, it's attachable, right? That's what was held. Yes, Your Honor, but I would take it one step further and look to see how the court interpreted 36A290 and also interpreted that the interest of the, you know, of the, there was still a property interest of the debtor in that account. And what I would also state, Your Honor, is that the court very easily could have said, well, this was essentially a gift to, you know, this belonged to the other spouse, so you can't get it. In fact, if you look to the dissent of that case, which talks about what other jurisdictions- I think you have to go a little slower for me to follow. I'm sorry, Your Honor. I apologize. What I was saying was that in the context of that case, it was, again, an interest of a husband and a wife. And in that case, so it was joint spouses in a joint account. And in that case, I believe, if I recall correctly, the dissent mentions in Carrillo that the wife was an innocent person, suggesting that it was her funds, and that they were going against the majority rule, which perhaps is Massachusetts, to say that we don't have this equitable balancing of whose money is in the account. They get it. The creditor gets it. There's a bankruptcy court decision in Connecticut, Farrell, which is critical of Carrillo in the first place. And apparently, the bankruptcy judge in that case thought that Carrillo was more favorable to creditors than the law of other states. I don't know if that's true, but that's what the bankruptcy court said. That may mean that Connecticut law differs from that of other states in this regard, might it not? I think that's exactly correct. I mean- How do we know that, though, definitely? We haven't had the Supreme Court say anything. What we do know, Your Honor, is in the dissent, or I believe it was a dissent in the Carrillo case, if I recall correctly, Justice Peters goes into the concern that this decision in the Carrillo, the Fleet Bank v. Carrillo, goes against the majority rule, and that it penalizes individuals who deposit funds into accounts, and even though it's their funds, they lose out, and we don't have this equitable accounting. Yes, exactly. It goes against the majority rule in the situation that Judge Robinson was hypothesizing, where all the money belongs to the innocent party. Yes, yes. In fact, it was the innocent party who deposited the money in. Yes. And apparently, according to Judge Peters and according to the bankruptcy judge in other states, you would have to figure out whose money it, in quotes, really was before deciding whether it was attachable. Connecticut law in Carrillo turns out to be more favorable to creditors. Now, it seems to me it would be an extension of Carrillo to say that even after the other party, who also has a 100% interest, has taken it out, it's still attachable because that's a fraudulent conveyance. It is an extension. I agree. And do you have, Mr. Colbert said he didn't have a Connecticut case that supported his view of how this all works. Do you have a Connecticut case that favors your view of how Carrillo would apply in this particular situation? So, Your Honor, in the Georges v. Kelleher case, it was not a husband. It's a bankruptcy case, which is cited in our brief. I apologize. I can find it, but I don't have this cite handy. There is Judge Manning, the bankruptcy judge in Connecticut, in Bridgeport, concluded that the issue of whose it was didn't matter under Carrillo, and she applied it to us. In fact, we were on the wrong end of that case. She concluded that the- That it was a fraudulent conveyance for a spouse to take money out of the joint account? Not a spouse. It was, I believe, a daughter and her mom, and the mom added, if I recall, I apologize if I don't have the facts. Okay, but even to whatever extent it is on point, that's still a decision by a federal judge making his or her best guess as to what the Connecticut Supreme Court would do. And it seems to me that each of you are telling us to take a guess about what the Connecticut Supreme Court is going to do. You say, well, they went as far as Carrillo, and so maybe they would extend it. Mr. Colbert says, no, they'd follow the First Circuit in Rao. They're good guesses, but why don't we- Would you be opposed to our sending this to the Connecticut Supreme Court? I realize this extends the time to get a decision and the expense of getting a decision, but it gives the Connecticut court the opportunity to decide what Connecticut law actually is. Your Honor, you asked this, if I oppose it. I believe the court can make a determination that the court got it right. Right, he thinks that, too. He thinks we can determine that based on discretion. And so I don't think it's necessary, but certainly, you know, that's the court's discretion in terms of what it decides is necessary and appropriate. Thank you.  Mr. Weintraub. So I would say we're not asking you to make a guess, but an educated guess based on the law that you have before you. I would also point out that there is a Connecticut statute, section 36-3, subsection 1, which in the U.S. versus First Bank decision out of this court, 737 F2D 269, the 1984 decision, the court did state, under Connecticut law, co-holders of a joint account are considered owners of a joint account. Co-holders of the entire account with access to the entire amount of money they're in. That was the decision out of this court. Do you have any objection to certifying this to the Connecticut Supreme Court? If that's what this court thinks is best, then I won't have an objection to it. I do think you can make a decision, but if that's what you think is best. The other side is saying we can make a decision, too. Yes. I think it's the case that maybe we ought to find out what Connecticut thinks. Of course, one or the other of you may be right. Probably is the best guess, but we may still be puzzled. There is information in the record in the complaint as to when deposits were made. The complaint does allege that at all relevant times the Start Bank account existed. The relevant times in the complaint go back to 2002. There's also, and I couldn't find the specific area where I saw it, but there is evidence in the record showing that the deposits into the Liberty Bank account were between 2013 and 2017, I believe. And is that the account with the $200,000 checkbook? Correct. Correct, yes. While you're flipping, I need an apology. I looked at the wrong slip of paper, and I said the wrong name, so I know that you're Mr. Colbert, so I apologize about that. Oh, thank you. I didn't even notice. In the alternative, and just very briefly, we have also argued that the trial court abused its discretion in entering a default judgment against Mrs. Greer based on the alleged discovery abuses. Just three quick points on that. Well, wait. I mean, you're bringing this up in rebuttal. It was your first point in the brief. Now you're bringing it up in rebuttal when your adversary has had only the briefest. I mean, he had an opportunity to say something about it, and we kind of cut him off because you'd only discussed the other issue. Can the briefs tell us all we need to know on your side on this subject? They do. They do. They do. I guess finally I would say that the Cato case, I think you've hit the nail on the head, that's a case where the account was opened up after the judgment by the husband, stopping the deposits of his salary from the joint account into an account solely for his wife. It was after the judgment, he made that fraudulent transfer into those accounts for his wife. She then withdraws the money from there. That's a different circumstance than here. These accounts were longstanding, and Mrs. Greer is not a judgment creditor when she withdraws the money. Thank you very much. Thank you. Appreciate your arguments. We'll take it under advisement. Thank you.